**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 26 2017

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 16-33780 |
| | ) | |
| John Kevin Buoy, Jr. and | ) | Chapter 7 |
| Sarah Marie Buoy | ) | |
| | ) | |
| Debtors. | ) | JUDGE JOHN P. GUSTAFSON |

### MEMORANDUM OF DECISION RE MOTION TO DISMISS

This case comes before the court on the United States Trustee's ("the UST") motion to dismiss Debtors John Kevin Buoy and Sarah Marie Buoy's ("Debtors") Chapter 7 case ("Motion") for abuse pursuant to 11 U.S.C. § 707(b)(1) and (3) [Doc. #11] and Debtors' response ("Response") [Doc. #14]. Debtors' Response was filed by attorney Patti Baumgartner-Novak ("Debtors' Counsel"). An Order for Evidentiary Hearing was entered on March 9, 2017, setting a trial date of May 23, 2017. [Doc. #12]. A Motion to Continue the Hearing on the UST's Motion was filed on April 10, 2017 [Doc. #21], and the evidentiary hearing was rescheduled for June 7, 2017. [Doc. #23].

The court held an evidentiary hearing on the Motion that Debtors, Debtors' Counsel, Counsel for the UST, and bankruptcy auditor for the UST Katherine Lowman attended in person. At the hearing, the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1939, 191 L.Ed.2d 911, 918 (2015);

*Harper v. The Oversight Comm. (In re Conco)*, 855 F.3d 703, 709 (6th Cir. 2017); *In re Norenberg*, 554 B.R. 480, 483 (Bankr. D. Mont. 2016). It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O); *In re Norenberg*, 554 B.R. at 482; *In re Floyd*, 534 B.R. 729, 731 (Bankr. N.D. Ohio 2015); *In re Rooney*, 436 B.R. 454, 455 (Bankr. N.D. Ohio 2010).

Having considered the motion, the response and arguments of counsel, and having reviewed the record in this case, for the reasons that follow the court will grant the UST's motion and dismiss Debtors' Chapter 7 case unless they convert the case to a proceeding under Chapter 13.

## **BACKGROUND**

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 7, 2016, stating that their debts are primarily consumer debts. [Doc. #1, p. 6, Part 6, Q. 16a; p. 8, Part 4, Q. 7; UST Ex. 2]. Debtors' Schedule D shows total secured debt in the amount of $34,321.00. Debtors' secured debt total includes $16,080.00 secured by a 2013 Subaru W2X Empreza, which was valued at $15,400.00 on the Schedules. It also includes a second vehicle, a 2011 BMW 328i, that is subject to a secured debt of $18,241.00, and which was valued at $11,520.00 on the Debtors' Schedules. [Doc. #1, pp. 17-18; UST Ex. 2]. Debtors stated an intention to reaffirm the debts on both motor vehicles [Doc. #1, p. 49; UST Ex. 2], and reaffirmation agreements on both motor vehicles have been entered into and filed with the court in this case. [Doc. ##10, 15].

Debtors' bankruptcy schedules reflect unsecured priority debt in the amount of $4,900. [Doc. #1, p. 8, Part 2: Q. 3 & pp. ##19-20; UST Ex. 2]. Debtors' schedules show unsecured nonpriority debts in the amount of $195,705.00, which includes a mortgage deficiency of $123,000.00 [Doc. #1, p. 23; UST Ex. 2], and student loan debt in the amount of $18,983.00. [Doc. #1, p. 29; UST Ex. 2].

Debtor-Husband is a supervisor at JB Hunt, with listed gross income of $4,038.48 per month. [Doc. #1, p. 36; UST Ex. 2]. He has been employed in his present position for 3 months. [*Id.*] Debtor-Wife is a registered nurse who has worked for the State of Ohio for 5 years, with listed gross income of $6,761.60 per month. [*Id.*]. Debtors' combined net income, after deductions for taxes, medicare, social security, insurance and mandatory retirement contributions, was listed as $7,874.12 per month. [Doc. #1, p. 37; UST Ex. 2].

Debtors' Schedule J shows five dependent children living in the household, with ages of 4, 10, 12, 17 and 20. [Doc. #1, p. 38; UST Ex. 2]. Expenses listed on Schedule J total $7,458.00. [Doc. #1, p. 40; UST Ex. 2]. Subtracting expenses of $7,458.00 from net income of $7,874.12, the Debtors list "Monthly Net Income" of $416.12. [*Id.*].

On the Form 122A-1, the Chapter 7 "Means Test", the income of the Debtor-Husband was lower, reflecting a period of unemployment during the six month period prior to filing. Gross wages for Mr. Buoy on the Means Test are listed as $1,608.08. [Doc. #1, p. 51; UST Ex. 2]. Gross wages for the Debtor-Wife are listed as $7,131.15. [*Id.*]. The second part of the Means Test was not filled out because, based on the income information and the family size, Debtors were below the median income level by a total of $2,334.24 a year, or $194.52 a month. [Doc. #1, p. 40; UST Ex. 2].

At the Hearing on the UST's Motion, the Debtors presented testimony that their expenses were even higher than those listed on Schedule J. The amount for home maintenance was stated to be $100 a month on their rented housing, not $35 per month. Medical expenses that had been listed at $150 per month were increased to $300 per month, in part because of an extra $100 per month for braces for one of the children. Child care was increased $50 per month, from $450 to $500.[1] The Debtors had also, post-Petition, purchased a $2,000 vehicle for the use of their son after his car's engine seized up. There is a payment of approximately $250 a month associated with that vehicle. This would increase the monthly expenses on Schedule J by over $600.

Those expenses include $580 for telecommunications services (such as cable services, internet, telephone and cell phones), three monthly car payments totaling $1,371, $408 per month for vehicle insurance, transportation expenses of $580 per month, $1,600 for food and housekeeping supplies, $85 for cigarettes, and $200 for "extracurricular fees/expenses". It also includes a deduction of $174 per month for student loans.

The United States Trustee offered the testimony of Catherine Lowman ("Lowman"), employed as a bankruptcy auditor by the U.S. Trustee. She testified that, based on her review, the Debtors' income was understated.[2] Instead of using a true monthly calculation, income on I and J had been calculated by simply

---

[1]/ The court understood that their child care provider was paid $20 per day, for three to five days of child care per week for the four year old. It was unclear how that would total $500 per month.

[2]/ It is not clear whether the Debtors are actually below the median income level when Debtor-Husband's income is adjusted to reflect the fact that he receives bi-weekly payments. Debtor-Wife's income is about $370 more on the Means Test than on Schedule I. But, the testimony - by both parties - did not focus on whether that higher gross income figure for Sarah Marie

3

doubling the bi-weekly amounts of Debtors' gross pay, as if they were paid semi-monthly. In other words, the income on Schedule I was calculated as if the Debtors each would receive 24 paychecks per year, instead of 26 paychecks per year.

In 2015, both Debtors (filing separately) received substantial federal refunds, $3,732 for Debtor-Wife [UST Ex. #5, p. 2] and $1,823 for Debtor-Husband [UST Ex. #4, p. 2]. The 2016 joint federal return reflects a refund of $2,395 [UST Ex. #6, p. 2].

Lowman testified about several different methods of calculating Debtors' disposable income, using the higher monthly income figures arrived at by using a bi-weekly calculation. Essentially, Lowman's testimony was that if the proper income figures were used, there would be substantial funds available to pay creditors, even assuming the higher expense figures were allowed, under either an I and J analysis, or a Chapter 7 Means Test that used the Debtor-Husband's current income as the basis for the joint income calculation (rather than the six month look-back period that was lower because he was only employed for approximately three months before filing).

Lowman testified that her review of the pay advices [UST Ex. #3] reflected that the gross income figures on Schedule I were understated by approximately $337 per month for the Debtor-Husband, and by between $500 and $600 per month for the Debtor-Wife. Even subtracting additional expenses for taxes of approximately 25%, Lowman testified that there would still be additional income dropping to the "bottom line" of between $600 and $675.

Even with all of the expenses, including the increases in expenses the Debtors testified to at the Hearing, there would still be approximately $400 per month available to pay creditors using income figures that were calculated based upon the Debtors being paid bi-weekly, rather than semi-monthly.

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

---

Buoy on the Means Test would be accurate based on the Form's look-back calculation requirements.

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), Congress lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *McGowan v. McDermott*, 445 B.R. 821, 824 n.5 (N.D. Ohio 2011); *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtors' case should be dismissed. *In re Weixel,* 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

In this case, the UST does not argue that Debtors filed their petition in bad faith[3]. Instead, the UST asserts that the totality of Debtors' financial circumstances demonstrates that they are not needy and that granting the Debtors a discharge would be an abuse of the provisions of Chapter 7. The "totality of the circumstances test" allows the court to consider both prepetition and postpetition circumstances. *See, U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006)("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Ng*, 477 B.R. 118, 130-131 (9th Cir. 2012); *In re Mestemaker,* 359 B.R. at 855-56.

Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126; *McGowan*, 445 B.R. at 824; *In re Robinson*, 2015 WL 1087316 at *3, 2015 Bankr. LEXIS 719 at *8 (Bankr. N.D. Ohio March 9, 2015). Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private

---

[3]/ In this case, Mr. Buoy experienced a period of unemployment, and the Debtors lost their home to foreclosure prior to the filing of this Chapter 7 case.

negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

Both Debtors' original and Amended schedules show that they are eligible to be debtors under Chapter 13. Secured and unsecured debts are less than the Chapter 13 debt limits. *See*, 11 U.S.C. § 109(e). Sarah Marie Buoy has regular income that appears to be stable. John Kevin Buoy, Jr. was unemployed for a period of time before securing his present job and has a recent history of off-and-on employment.

Under § 707(b)(3), the UST argues that Debtors have sufficient disposable income to repay a portion of their unsecured debts out of future earnings, in a Chapter 13 plan or otherwise. The UST argues that the student loan payment of $174 per month is not a proper deduction, and should instead be "applied to a ratable distribution among all Debtors' unsecured creditors." *In re Robinson*, 2015 WL 1087316 at *3, 2015 Bankr. LEXIS 719 at **10-11 (Bankr. N.D. Ohio March 9, 2015).

In this case, accepting the additional expenses claimed by the Debtors, there would still be income in excess of those expenses in an amount that would exceed the statutory "abuse threshold", even over a three year period. There appears to be at least $400 per month of disposable income available if the income is properly calculated[4], and Debtors have a history of receiving tax refunds. Looking at the "presumption of abuse" level in 11 U.S.C. § 707(b)(2)(A)(i)(II), currently at $12,850 (over 5 years) - the Debtors here have disposable income in excess of that amount, even using a multiplier of 36 months, and ignoring the history of tax refunds. *See*, *In re Mestemaker*, 359 B.R. at 858 ("This court does not necessarily agree that abuse or lack of abuse based on the totality of a debtor's actual financial circumstances under § 707(b)(3) must be determined by application of the 'abuse threshold' established for purposes of the means test construct in § 707(b)(2). But the 'abuse threshold' is at least a helpful guideline to Congress's intentions in giving content to the concept of abuse under § 707(b)(1)."); *In re James*, 414 B.R. 901, 915 (Bankr.S.D.Ga.2008) ("the abuse threshold fixed in § 707(b)(2)(A) is a helpful tool for determining whether a case should be dismissed for abuse under § 707(b)(3)(B). . . . We should pay close attention to the standard, but not become slave to it.")

**THEREFORE**, based on all of the foregoing reasons and authorities, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a

---

[4]/ "The plain meaning of the phrase 'debtor's financial situation' must include a debtor's actual income and expenses, since such information is the starting point for any analysis of an individual's financial situation." *In re Mestemaker*, 359 B.R. 849, 854 (Bankr.N.D.Ohio 2007)

motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. # 24] will be granted, and this case will be dismissed, by separate order of the court.

###